We'll hear the next case, Colorado Motor v. Town of Vail, 24-1017. Why don't you give us about 30 seconds here? Yeah. Okay, Mr. DelCorp, whenever you're ready. Good morning. May it please the Court. My name is D.J. Goldfarb and I represent the Town of Vail and Police Chief Ryan Kinney. The District Court found that safety was a legitimate concern for Vail's enacting the amended ordinance removing all delivered vehicles from its lawfully designated pedestrian mall areas within its Town limits. The conclusion that the Town had a legitimate, logical safety purpose for its regulation demonstrated that the amended ordinance was exempt from preemption under the textual exceptions that are present in the F-AAA and the ADA, which preserves state and local police powers for regulating motor vehicle safety. The District Court's effort to divine Vail's singular motivation for regulating ignored instruction from the Ninth Circuit and other persuasive authority that have dealt with this safety exception, finding that a regulation's logical safety purpose is sufficient to avoid preemption, even if there are other motivations for that regulation. Did the District Court say otherwise? I'm sorry? The District Court didn't say otherwise, did it? No, the District Court understood that there could be multiple reasons for regulating, but therein lies one of the errors, which is so long as the regulating body can show a logical connection to motor vehicle safety, that is sufficient to save the regulation from preemption. And so despite recognizing this principle, the District Court disregarded it later on in her order. Well, let me ask you about that, because looking at her order, she does give credence to the notion that safety is a consideration. And yet before that, she throughout cites the record as far as aesthetics being a big motivator and clean air, lack of pollution being a big motivator. And you see the pictures and you understand why. It does look like kind of a congested mess, but still have to abide by the federal law. Then we come to the safety. And she says that delivery drivers for at least two of the major HVCCs undergo rigorous safety training and drug testing as part of their respective onboarding processes. Prior to the original or amended ordinance, the town had never issued a citation to any delivery driver, regardless of their activities in the pedestrian mall, and drivers had never been involved in a traffic accident. That speaks directly to nexus. And it makes a pretty powerful case that electric carts zooming around may be equally or more dangerous than big clunky FedEx or UPS or other automobiles. In other words, when I cross the street coming to court this morning, I'm not worried that I'm going to lose my spleen because a FedEx truck hits me. I'll see it. But these scooters that zip up at X miles an hour, that's what I'm scared of. So the nexus part of this, I don't understand why she erred on the nexus. I think that the Ninth Circuit's discussion of that issue in California Toe is instructive here. And what the Ninth Circuit distilled it down to was whether or not a regulation may be effective is not germane to the analysis. The point is, what is the intent behind regulation? And here, the district court is critical of how Vail is going about increasing pedestrian safety in its pedestrian mall areas. There's no doubt about that, and that there may be critiques about these club cars being perhaps more dangerous than larger vehicles. That is a valid critique, but that does not play into the preemption analysis, which is looking at the town's intent in why they want to remove these large vehicles from these narrow areas. But isn't the nexus requirement looking at not just, you know, they may say the word safety as an intent, but there's nothing in the record to support that at all. It almost sounds like a pretext. Well, in this case, safety is discussed in the regulation itself, in the body of the regulation. In addition to that, in the lead up to regulating trucks out of these zones, I mean, Vail has a history of 45 some odd years of dealing with this issue. You know, they lawfully designated these as pedestrian mall areas. In the 1980s, they tried to establish specific delivery times where trucks would enter at low pedestrian traffic times of the day to do these deliveries. And so the record developed over decades. Yeah, but that record wasn't relevant to safety concerns, was it? No, it directly spoke to the need to protect and preserve the abilities for pedestrians to freely move in what is, again… Yeah, but for the guest experience. I mean, isn't that the phrase that keeps getting repeated and that Judge Sweeney discusses is that was the primary motivation? And I understand the mixed motive argument. Sure. But I guess what I'm getting at is don't they have to show in the nexus inquiry at least some concern for safety beyond just, well, there are trucks, therefore there must be a safety concern. We have no history of accidents or tickets or anything like that. And that comes back to, well, two points. A, that comes back to the Ninth Circuit's discussion of this issue, which is you don't need to point to empirical evidence to show a safety intent. And that allows for regulated bodies to be prospective in their regulation to identify a common sense problem and regulate in an effort to protect those, as here, using these pedestrian areas. Secondarily, Your Honor, there was testimony from the Chief of Police, who is the primary architect of this regulatory scheme, discussing at least one incident in which a pedestrian was backed into by a FedEx truck and a number of other instances of property damage that occurred as a result of these delivery vehicles driving through the narrow streets of town. And so that those property damage incidents weren't injuring pedestrians, I think, is besides the point. Because then we get into a slippery slope argument of, well, how many people need to be hit in order for the safety intent to be valid? How many of those injuries need to be? That exaggerates it. I thought that what the records showed is someone had been brushed against. And you're talking about multiple pedestrians being struck. Here's the question that I have for you, because you're talking now the size of the vehicle. Is 106 West Logistics barred from using bigger vehicles by the ordinance, the amended ordinance? By the language of the ordinance? Well, the ordinance, yes. But Chief Kinney testified that if they were to bring in a large box truck, similar to one of these larger delivery vehicles that the town is seeking to remove, that they would be cited. How can you cite them if it doesn't violate the ordinance? Because, again, Your Honor, this goes back to this sense of there may be flaws in how the regulation is written. That goes to the effectiveness component that the Ninth Circuit counsels is not a part of the project. But that's startling to me. You're saying that, sure, we have an ordinance and this is what it says, but please disregard that. That's not how things actually are going to work. Instead, contrary to the terms of the ordinance, big trucks, if they come in, why, they're going to be in trouble. That doesn't sound like law to me. Well, I can tell you that the Chief testified at the preliminary injunction hearing that in practice they would not permit those trucks to enter, right, because they all have to enter through one singular area. What if one does? What's that? If a truck of this size comes in that's run by 106 West, the Chief testified that they would be cited for that. And what would the violation be? A violation of this ordinance. Wouldn't it also be a violation of their contract? Because didn't Chief Kenney testify that 106 West Logistics was contractually obligated to continue using these smaller vehicles? That's correct, Your Honor. And that is the primary purpose of 106 West is to operate the smaller e-delivery vehicle. When you say cited, I automatically translated that as criminally cited. Are you talking criminally or are you just talking about a breach of contract? Well, the 106 West company has a contract with the town. Understood. But are you talking about a criminal citation? Yes, it would go to their municipal. So there would be a criminal citation when the ordinance doesn't bar it? Potentially, yes, if that were to occur. But again, we're looking beyond the intent, which is the prism through which the preemption question is to be analyzed. The drafting of the regulation itself speaks to its effectiveness, its logic, things of that nature. And so while there may be issues on that front, that does not result in a finding that this regulation is, in fact, preempted. Can I just follow up? Because I do think that this relates very much to your very helpful conversation with Judge Phillips. And I'll just put it this way, not necessarily a question, but what I'm struggling with. So California Toe does have this, on the second element, this issue of logic. Does it have a logical nexus? Much like if this were a constitutional case, I would be thinking, this sounds like rational basis as opposed to strict scrutiny. And you seem, although you don't put it in these terms, maybe in your briefing, that really the inquiry is supposed to be like 106 West Logistics, I mean like California Toe's second element, really the equivalent of rational basis. There's a legislative intent behind the ordinance, Chief Kenney's testimony, et cetera, that this was a purpose to promote safety. And then your adversaries, basically without using this terminology, say, you know, this is really more like strict scrutiny, or at least intermediate scrutiny, because there is a difference. I share Judge Phillips' skepticism of how somebody could be cited for a criminal violation for violating a contract. So what you have is you have a carrier, 106 West Logistics, that's contractually precluded from using these bigger vehicles, but not in the ordinance. And so I can understand a logical person saying, well, they're contractually precluded from using these box trucks like FedEx or UPS, but there's nothing in the ordinance. And so can you rationally differentiate, because they're both precluded in different ways through different sources, and so should we be looking at it through intermediate scrutiny or strict scrutiny, or should we look at it from the equivalent of rational basis like California Toe? To answer your direct question, if we are going to equate it to a level of scrutiny, I think it is rational basis or perhaps rational basis plus, then the regulating body should come forward with some evidence to justify its regulation. Why? I understand that's your point, but why? And that speaks to demonstrating the safety intent, the safety motivation behind the regulation itself. To speak to your, I guess, your sub point about 106 West, California Toe makes the point that there could be provisions within a regulation that end up being preempted if that is the case. But just because there may be an issue with 106 West's ability to access one of these pedestrian mall areas does not mean the rest of the regulation itself need be preempted, or better said, is saved by this regulatory safety exception. And so it could end up being a point by point analysis of the safety intent behind each component of the regulation. Unless there are any other questions, I think I'd like to save my last minute and 12 seconds for rebuttal. Lisa, stop the clock so you're not being cheated on your vote. Do you have your question? I'm good. Okay, thank you. Thank you. Good morning, and may it please the court. My name is James Eckhart, and I represent the Colorado Motor Carriers Association. With me at council table is Shannon Cohen. The district court properly enjoined Vail's amended ordinance that gave 106 West's logistics a monopoly for the provision of motor vehicle delivery services within the town's business core. Vail's ordinance picks winners and losers and flies in the face of Congress's purpose in passing the F4A to allow the market, not states and their subdivisions, to determine the prices, routes, and services of motor carriers. The amended ordinance does not fall within the F4A's exception for a state's safety regulatory authority with respect to motor vehicles for three reasons. First, it is not genuinely responsive to safety concerns. Second, it does not fall within Vail's preexisting and traditional state police power over safety. And third, it does not regulate with respect to motor vehicles. On the first point, the district court correctly held that Vail's amended ordinance was not genuinely responsive to safety concerns. Vail enacted the ordinance to address aesthetic and other non-safety issues. The contemporaneous evidence of the legislative intent overwhelmingly shows that Vail was responding to aesthetic and other non-safety issues, and the text of the ordinance confirms its non-safety purpose. But they can have mixed motives, can't they? Our primary position is that they cannot. So they can only enact an ordinance if it deals with safety and has no other purposes? If a state passes a law, the purpose of which is twofold, one which flies in the face of the congressional preemption behind the F4A, that ordinance is preempted. But what if the other half was targeted as safety, as the ordinance says it is, and then wouldn't that invoke a state's subdivision of a state's police powers? I think ordinarily the federal law prevails in that instance, but if Your Honor is not comfortable going that far, I think at a minimum the primary concern when a state is purporting to exercise its regulatory authority over safety should be safety. And certainly here, as the district court found, the primary concern was not safety, even if this, you know, in a hypothetical case mixed motives were permissible, the primary purpose here was not safety. The ordinance says it's for safety. That's what the ordinance says, but, I mean, it lists three. So just don't believe, don't believe your lied ass. Well, the ordinance says pedestrian safety amongst other things. Yeah. There's no findings with respect to what that pedestrian safety is, the purpose that it was targeting. I think that distinguishes this case from their principal authority, California Toe. In California Toe, the San Francisco City Council made extensive legislative findings that were in the ordinance itself about the safety reasons that justify the ordinance in that case. And here there's just no contemporaneous evidence at the time the ordinance was passed for the pilot program began that the town was targeting safety. The overwhelming contemporaneous evidence, and I'll go back to California Toe again, which says when you're trying to determine legislative intent in this area, let me give you the site, this is the first California Toe case, 693 F3rd at 864 footnote 15. Evidence of legislative intent should usually be gleaned from, quote, the contemporaneous record. Further quoting, a court should be wary about crediting post hoc safety rationalizations that conflict with the contemporaneous legislative record. The only evidence that the town put on at the preliminary injunction hearing to support its safety justification was testimony, live testimony from Chief Kenney and Chief Novak. Overwhelmingly, the memos, the press releases, the videos that we submitted from the town council meetings, every town council meeting is recorded. They submitted no town council videos that support the safety justification of the ordinance. Overwhelmingly, the contemporaneous evidence supports our position. Part of, I would even say a large portion of the evidence that you're relying on of legislative intent is the focus on the guest experience.  Yes, I would agree. And did Chief Kenney not testify at the preliminary injunction hearing that when they were using the term guest experience, that was in relation to the safety of guests? Yes, I agree that's what Chief Kenney said. And so you may not believe it, I may not believe it, but how could you say that there was no, that, okay, we have it in the ordinance, that at least part of the intent is safety. We, the high volume common carriers, are relying on the testimony about a guest experience. He reconciles that in his testimony. So how could we say, well, there's just no evidence that they really, this was just a lie. They lied in their testimony, they lied on the ordinance. It was not, had nothing to do with safety. How could we say that in an opinion? A couple of responses to that, Your Honor. First off, under the ordinance itself, when you look at it, it lists guest experience and separately pedestrian safety. Right, right. Safety is not just for pedestrians. It's also to eliminate obstructions for the emergency vehicles, which I think was a good portion of their focus on safety. That's not pedestrians. Well, I don't, the ordinance itself says nothing about the emergency vehicle issues that were testified about at the preliminary injunction hearing. But to finish the point I was making, when you look at the ordinance and where it lists the purposes of the ordinance, guest experience is identified separately from any concern about pedestrian safety. And so, you know, maybe in Chief Kenney's mind, and we're not trying to disparage him or call him a liar or anything, I think he probably equates guest experience and pedestrian safety. The question, though, is what does the town council think, and what was their purpose in passing this ordinance? And clearly they think guest experience is different from pedestrian safety. Is that the question? What I want to do is get back to center on what the district court said, which I don't think you quite characterized correctly. District court in the preliminary injunction order says the court finds. Those are important words. Court finds that safety relating to motor vehicles was a legitimate concern, although perhaps not the chief concern of the town in amending the ordinance to remove HVCCs. We can't just disregard a court's finding. Are you saying that it was clear error? I think in the sentence or two before that, the court says that the primary concerns were aesthetics. Well, it says although perhaps not the chief's concern. But I don't want to argue about that point. What I want to direct your attention to and get a response is the district court found that it was a legitimate concern. And so you're arguing with the district court's finding as though you're here in the district court. You're not. We have a standard review on findings. So address that, please. Yes, we'll do. So that portion of the district court's opinion was addressing the problem one of the California tow test as I understand the Ninth Circuit's test. And so under that test is my understanding of it. The district court is supposed to identify the purported safety concerns that the town or the regulating body has offered. And the second part of the test is meant to determine was the town genuinely responding to those safety concerns. Are you arguing clear error or not? We are not challenging that portion of the district court's, well. I thought that's all you've been doing for the last five minutes, just challenging whether or not safety was a legitimate concern. I think the district court did two things, Your Honor, under the California tow test, which we argue in our brief that we don't think that the Ninth Circuit's test accurately describes how courts should look at the safety exception. This is an issue of first impression in this court. You're free to reject that for the reasons we outlined in our brief. But the district court applied the California tow test. As I understand that test, and this was the portion of the preliminary injunction order that you were And in the second part of the test, the district court determined whether the town was genuinely responding or whether the ordinance genuinely responded to those safety concerns. And on that second part. You can have both. You can have both of those things. It can be a legitimate concern and the nexus not be met. I agree, Your Honor. And I think that's what the district. And the court found legitimate concern. I agree. Safety concern. I agree. And so do you accept that? Or are you saying that it's clear error? Are you saying you don't have to make a clear error finding? I just want to know which one. We are not. I don't disagree. We don't disagree with that factual finding. We do disagree that the California tow test is the appropriate test. I think that may be where my disconnect is with Your Honor's question. Thank you. But just to reemphasize, you know, the first prong of the California test, if that's where this court decides to go, is not the end of the story. And there was plenty of evidence to support the district court's finding that Vail was not genuinely responding to whatever safety concerns it  And I'll again submit that the first, the only evidence that Vail submitted at the preliminary injunction hearing to support either the pedestrian safety purpose or the emergency vehicle safety purpose was live testimony from Chief Novak and Chief Kenny. There was no testimony from any town council member about the purported safety purpose of the ordinance. All of the statements from town council members were submitted by the CMCA through videos we found online that undermine any safety purpose under the ordinance. Let me ask you this. To respond to this sort of counter argument, that as you acknowledge, I think, that there was a legitimate safety concern. There was testimony by the two chiefs, the fire chief and the police chief, that part of the safety concern was the obstruction to emergency vehicles from trying to get past these large trucks that were going to be, that were permitted under the original ordinance. Third step to this argument, there was a contract that prohibited 106 West Logistics from having anything other than these very small vehicles, much from the pictures, looks like those things that zip through the airport, not nearly as large and difficult to see through like a FedEx truck or a UPS truck. And so the upshot of that is that the only vehicles that were a possible obstruction to emergency vehicles were the three, the DHL, the UPS, and the FedEx trucks, not the 106 West Logistics, because they didn't have the ability contractually to do that. So why isn't that at least a rational implementation of a legitimate safety interest based on the testimony? So Chief Kinney's testimony was clear that under the ordinance itself, 106 West is not restricted. He did say that there may be a contractual. He said there was a contractual. That contract was never offered. That's not in the record. I could be wrong about that. I've got a bad memory. I mean, I thought he testified that there was a contract. He did testify about that. All right. But I don't know. I don't represent 106 West Logistics. I don't know that their reading of the contract is the same as the town's. Okay. But you never, at least in the preliminary injection hearing, I didn't see any argument. I didn't see any cross-examination to question the existence of a contract precluding 106 West Logistics from using these bigger vehicles. Did I overlook that, some argument? No, Your Honor. We're challenging the ordinance. Right.  So I'm not trying to catch up. So why isn't that a legitimate implementation of a legitimate safety concern? A few things on that, Your Honor. The first time we ever heard the emergency vehicle issue offered as a purpose to justify the ordinance was at the preliminary injunction hearing. That's not in any of the contemporaneous evidence about why the town council passed the ordinance. That's number one. Number two, I mean, when you look at the ordinance itself, there are a number of exceptions, including garbage trucks, armored vehicles, buses. I mean, there's a variety of vehicles that are larger than UPS or FedEx trucks that the town is allowing within the ordinance. Okay. They may be allowing the ordinance, but on public buses, the district court in the order in its analysis of Nexus says, well, no one has explained to me, if it's really about safety, why the city is allowing things like buses and, you know, garbage and recycling through the pedestrian area. Well, the city in its brief says, well, the district court's just wrong. We don't allow buses in the pedestrian area. You know, buses are pretty large vehicles. So how do we analyze the district court's opinion when the city's arguing that's just, you know, finding facts that are not based in the record? I don't know that the testimony is clear on that. Your Honor, I think it goes both ways and the district court was entitled to. On the buses specifically? I think there was testimony that buses do. First off, under the ordinance itself, there is no restrictions on where buses can go. I think the conflicting testimony was currently the bus route just skirts the pedestrian mall or a certain street within the pedestrian mall and doesn't implicate sort of the core area is my recollection of the testimony. I think the district court was entitled to make a factual finding on that point. I see my time's up. If I can make one more point, Your Honors. If you can do it in 20 seconds. So putting aside the safety justification and assuming that the record went entirely the other way, the town was genuinely responding to safety concerns. States do not have the authority to decide which motor carriers will operate on their streets. They can't pick winners and losers. We've cited the case law in our brief to that effect. The district court didn't feel the need to reach that issue because it held for us on the safety justification, but that provides an independent basis for this court to affirm on the amended ordinance. You did all that in 20 seconds? Greg, do you have a question? No, thank you. Rich. Okay, thank you. Thank you. May it please the court and I will be brief. The district court in the latter half of its order wholly ignored the congestion issue related to emergency personnel access to the pedestrian areas. And so that alone is an independent basis demonstrating the safety intent of this regulation. And to say that that wasn't raised until the hearing is a misnomer because it appears in the body of not only the amended ordinance, but also the original version removing delivery vehicles, the vast majority of delivery vehicles from the pedestrian mall areas. And finally, I want to reiterate that sometimes the safety justification is so obvious, and this comes from California Toe, that further inquiry is wholly unnecessary. We're talking about removing large vehicles from a pedestrian area. Vail's goal is to keep these large vehicles away from people who believe they are using a pedestrian area. And for this reason, we believe the district court erred and we would ask this court reverse entry of the preliminary injunction. Thank you very much. Thank you. This is very well presented by both sides, both in your briefs and orally. Thank you for your excellent advocacy. Both of you. This matter is submitted.